WILLIAM TEMPLE *v.* CITY OF NEW BRITAIN.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued May 8—decided June 7, 1940.

*Maurice W. Rosenberg,* with whom, on the brief, was *John F. McDermott,* for the appellant (plaintiff).

*John F. Downes,* corporation counsel, with whom, on the brief, was *John L. Ericson,* for the appellee (defendant).

ELLS, J. The finding, which is subject to correction in no material respect, states these facts: The plaintiff had been a police officer of the defendant city since 1930 and until his dismissal for cause on December 30, 1936. His record had not been good. In 1931 he was penalized one week's pay for inattention to duty; in 1932 he was fined six days off for being late, and again, ten days' pay for sleeping on duty; in 1933 he was penalized ten regular days for being intoxicated while on duty, and required to tender his resignation as a regular officer under the condition that it was to take effect any time he was found guilty of violation of departmental rules; in 1935 he was reprimanded by the chief for being late. At 12:30 p. m. on December 23, 1936, while operating a motor vehicle on Main Street in New Britain, under the influence of intoxicating liquor and in an unfit condition to operate a car, he crashed into an automobile owned by the chairman of the board of police commissioners, parked at the curb. At 3:30 p. m. the chief of police sent two officers to his home to bring him to headquarters. They found him in bed in a drunken condition, and upon informing the chief by telephone of this fact, were told to leave him where he was. The chief im-

mediately suspended him from duty, and reported his action to the board of police commissioners. On December 28th, at about 3 p. m., written notice was served on him to appear before the discipline committee of the board at 7 p. m. on December 30th "to answer charges of conduct unbecoming an officer on December 23, 1936." At the meeting the chairman of the board made a statement to the committee, and then disqualified himself and withdrew; the committee heard the chief of police, the two officers who had been sent to plaintiff's home, an officer who was riding in the car with the plaintiff on the 23d, and the plaintiff himself. So far as appeared no one was excluded from the hearing, and the plaintiff did not ask that any other person or persons be called as witnesses. The discipline committee recommended that the plaintiff be dismissed for conduct unbecoming an officer and insurbordination to superior officers, and the board of police commissioners so voted. The board had his record and his resignation before it, and considered them when it took this action. Following his dismissal, the plaintiff turned in his badge and all of his police equipment. The plaintiff consulted an attorney and sought a new hearing, but none was granted him. After considerable correspondence this action was brought to recover $6481.50, although it appears as an undisputed fact that upon his dismissal he immediately secured employment elsewhere and has been continuously employed at a higher wage than he would have received as a police officer. The only claim made by the plaintiff at the trial and therefore the only one necessary for us to consider is that there was no legal hearing because of the failure to give three days' notice.

The charter provides that no member of said department shall be dismissed except for sufficient cause

duly shown at a public hearing with "at least three days' notice of such hearing, which notice shall include a copy of the charges preferred against said accused." The notice was not left with the plaintiff three full days before the hearing. "That under the circumstances the plaintiff ought to have been suspended and that the same result might have followed had these limitations been complied with, furnish no excuse for the disregard of the plain mandate of the charter." *McDermott* v. *New Haven,* 107 Conn. 451, 453, 140 Atl. 826. The defendant pleaded by way of special defense that because of the resignation, which in accordance with its terms was to take effect at any time the plaintiff was found guilty of a violation of departmental rules, the plaintiff was not entitled to the three day charter notice. The trial court properly rejected this defense because it did not appear that the board accepted the resignation, but on the contrary dismissed the plaintiff for conduct unbecoming an officer.

The issue is whether the plaintiff waived his right to a full three day notice. The trial court concluded that he did, and the law and the facts found justify this result. "Waiver is the voluntary relinquishment of a known right. It involves the idea of assent, and assent is an act of understanding. This presupposes that the person to be affected has knowledge of his rights, but does not wish to assert them. Intention to relinquish must appear, but acts and conduct inconsistent with intention [to assert a right] are sufficient." *MacKay* v. *Aetna Life Ins. Co.,* 118 Conn. 538, 547, 173 Atl. 783. The finding makes it sufficiently clear that he knew the hearing had to do with his flagrant conduct of the afternoon of December 23d, and that his resignation was in the hands of the board, effective at its will on the happening of just such a

species of dereliction. It further states that before proceeding with the hearing the chairman asked him if he knew what he was there for and he replied "Yes," and then upon being asked whether he was ready to proceed he replied in the affirmative; that he made no objection of any kind, and did not ask for a continuance. As a public officer he is presumed to know that the charter provided for a three day notice. *Samis* v. *King*, 40 Conn. 298, 310. In addition, the previous disciplinary action to which he had been subjected affords a further ground for the court's conclusion that it is reasonably inferable that he knew the ordinances relating to the police department.

The plaintiff endeavors to escape the inevitability of this result by claiming he thought the hearing involved only a fine or suspension, in which event three days' notice was not necessary, and that therefore by going ahead he did not intentionally waive the notice to which he was entitled as to the graver charge. However, his past record, his resignation, and the seriousness of his new offense would cause any reasonable person to understand the gravity of the situation, and they support the inference of a waiver drawn by the trial court. The resignation itself, standing alone, cannot support the action of the board, as we have said, but it is a factor in determining the correctness of the court's conclusion that he intentionally waived the three day notice.

Applying the facts as found to the succinct statement of the requirements of a valid waiver as laid down in *MacKay* v. *Aetna Life Ins. Co.*, supra, the court was warranted in concluding that this plaintiff voluntarily relinquished a known right. He had knowledge of his rights, but under the circumstances quite naturally did not wish to assert them; with his resignation in the board's hands he was already in a

difficult enough position without antagonizing it further by insisting on a purely technical right. The determination whether there was a waiver was one of fact. "Waiver is a fact or a conclusion from facts." *Dexter Yarn Co.* v. *American Fabrics Co.*, 102 Conn. 529, 555, 129 Atl. 527. Where there is no express waiver, one may be implied. Such a waiver may be found as an inference of fact from the conduct of the plaintiff under the circumstances of the case. Where there are facts sufficient to warrant it, the determination whether there has been a waiver is to be made by the trier. *Lee* v. *Casualty Co. of America*, 90 Conn. 202, 206, 96 Atl. 952.

The trial court's conclusion that there was a waiver was an inference reasonably to be drawn from the facts found. We would not be warranted in disturbing this conclusion—indeed we think it is almost necessarily arrived at.

There is no error.

In this opinion the other judges concurred.