STATE v. R. F. McGRAW.

(Filed 19 November, 1958.)

**1. Criminal Law § 1: Municipal Corporations § 40—**
Notwithstanding the broad provisions of G.S. 14-4, the violation of a municipal ordinance cannot be a criminal offense if the ordinance is invalid.

**2. Municipal Corporations § 5—**
Municipal corporations are creatures of the General Assembly and can have only such powers as are expressly conferred by the General Assembly or such as are necessarily implied by those expressly given.

**3. Municipal Corporations § 8g: Cemeteries § 1—**
A municipal corporation has no power to provide by ordinance that a fee be charged for the setting of a marker at a grave in the municipal cemetery when such marker is not purchased from nor set by the municipality, and no part of the charge for such setting is to be used in the perpetual care fund of the cemetery, and such charge is not an inspection fee. G.S. 160-2(3), G.S. 160-200(22), G.S. 160-200(23), G.S. 160-258, G.S. 160-259. Grave constitutional questions would be raised by a statute giving a municipality such advantage in a business engaged in for economic gain in its proprietary capacity.

**4. Municipal Corporations § 8a—**
While the General Assembly may authorize a municipal corporation to engage in a business for public benefit and to extend such power beyond its corporate limits, such authority does not confer upon the municipality the right to exclude competition in the territory served.

PARKER, J., not sitting.

APPEAL by defendant from *Preyer, J.,* May 1958 Term of IREDELL.

Defendant was tried and convicted in the recorder's court on a warrant which charged violation of an ordinance of Mooresville. He appealed to the Superior Court where a special verdict was returned. Summarized, the facts found by the special verdict are: Mooresville, a municipal corporation, on 4 March 1957 adopted an ordinance with respect to public and private cemeteries and particularly Glenwood Memorial Cemetery owned by the town. The ordinance prohibits monuments or stones of any kind but permits bronze tablets and markers, which are required to be set level with the ground at the head or foot of a grave except family markers which may be set in the center of the plot. The ordinance specifically provides: "WORK TO BE DONE BY TOWN. All grading, landscape work and improvements of any kind; all care on graves; all planting, trimming, cutting and removal of trees, shrubs and herbage; all openings and closings of graves, all interments, disinterments and removals, and all memorial settings and monument foundations shall be made by the Town." It also provides: "DUTY OF TOWN TREASURER. It shall

be the duty of the Town Treasurer to deposit and distribute all sums in payment of lots, memorials and cemetery services to the General Fund and to the Perpetual Care Fund according to the schedule given in Section VI of this ordinance."

Section VI of the ordinance fixes the price of lots dependent on location and grave capacity. One-half of the sale price of each lot is allocated to a perpetual care fund and the other one-half to the town general fund. It also fixes the price charged by the town for various types of markers sold by it, which price includes the cost of setting. Thirty per cent of the sales price is set aside for the perpetual care fund and approximately fifteen per cent is set aside for the town's general fund. A scale of charges for setting memorials is prescribed when they are not purchased from the town. For setting a memorial of the kind involved in this case the charge is $40, $12 of which is allocated to the perpetual care fund and $28 to the town's general fund. That section further provides: "When the memorial is not furnished by the Town, the setting charge shall be remitted before setting." Section XVI of the ordinance entitled "Perpetual Care" provides in subdivision 3: "The term 'Perpetual Care' shall in no case be construed as meaning the maintenance, repair or replacement of any grave markers placed upon lots or graves . . ."

Subsequent to the adoption of the ordinance, R. W. Howard purchased from the town a lot in Glenwood Cemetery. Howard, to mark his father's grave, purchased a bronze marker from defendant, who set the marker, without paying or tendering the charges for setting as set out in the ordinance.

Defendant has been engaged in the business of selling cemetery markers and setting foundations therefor for a period of ten years. He is qualified to do such work and was licensed by the State of North Carolina to engage in the business of a marble yard.

Defendant appeals from the adjudication of guilt based on the special verdict.

*Attorney General Seawell and Assistant Attorney General Bruton, for the State.*
*Baxter H. Finch and Raymer & Raymer for defendant, appellant.*

RODMAN. J.   Acting contrary to the provisions of a municipal ordinance is made a misdemeanor by statute, G.S. 14-4. Notwithstanding the all-inclusive language of the statute, guilt must rest on the violation of a valid ordinance. If the ordinance is not valid, there can be no guilt. *S. v. Abernethy,* 190 N.C. 768, 130 S.E. 619; *State v. Prevo,* 178 N.C. 740, 101 S.E. 370.

Defendant admits he acted as charged. He denies the power of

the town to declare such act a crime because (1) the Legislature has not delegated such authority to the town, and (2) if delegated, such delegation would do violence to sections 7, 17, and 31 of Art. I of our Constitution.

We need only consider the question of the authority to enact the provisions which reserve to the town the exclusive right to set memorial markers and require the payment of a special charge for setting such markers not purchased from the town.

"A municipal corporation is a creature of the General Assembly. *Ward v. Elizabeth City,* 121 N.C. 1, 27 S.E. 993. Municipal corporations have no inherent power but can exercise such powers as are expressly conferred by the General Assembly or such as are necessarily implied by those expressly given. *S. v. Ray,* 131 N.C. 814, 42 S.E. 960; *S. v. McGee,* 237 N.C. 633, 75 S.E. 2d 783." *Davis v. Charlotte,* 242 N.C. 670, 89 S.E. 2d 406; *Laughinghouse v. New Bern,* 232 N.C. 596, 61 S.E. 2d 802; *Madry v. Scotland Neck,* 214 N.C. 461, 199 S.E. 618; *S. v. Gulledge,* 208 N.C. 204, 179 N.C. 883; G.S. 160-1.

The Town of Mooresville was created by c. LXXI, Private Laws of 1872-73. There is nothing in that Act relating to cemeteries. We have found no amendment to the charter of the town which expressly or impliedly authorizes the enactment here in question. None has been called to our attention.

Since no special authorization has been given to Mooresville, we look to statutes of statewide scope to ascertain if the power is included in the authority granted to all municipal corporations. An examination of pertinent statutes shows no specific authorizations.

If the power is to be implied, it must come from G.S. 160-2(3), 160-200(22), 160-200(36) which permit towns to acquire lands for cemetery purposes, prohibit burials in any other places with authority to "maintain cemeteries" and "regulate the manner of burial in such cemetery," or from G. S. 160-258 and 160-259 which authorize the creation of a fund for perpetually caring for and beautifying cemeteries.

Defendant does not challenge the power of the town to prescribe reasonable rules and regulations relating to the management of the cemetery including interment and disinterment of the dead, size of lots, location and number of graves on a particular lot, kinds, types and sizes of memorial monuments and markers, types and character of foundation for such monuments as may be erected, kind and size of shrubbery and other means used to beautify and sanctify the lots. He does not question the right of the town to engage in competition with him in selling memorial markers. He merely says that it is not necessary to the proper exercise of the power given for the town to

exercise a monopoly in the business of setting memorial markers, a purely commercial enterprise, or by legislative fiat penalize its commercial competition.

That the charge is not an inspection fee required to insure compliance with rules fixing the manner of setting is evident from the testimony of the city manager, a witness for the State. He said: "In addition to selling grave lots, the Town of Mooresville is in the business of selling bronze markers and is in competition with other sellers of bronze markers. The Town is also in the business of setting markers in the cemetery . . . If a dealer in memorials other than the Town sells a marker or memorial to an individual for a lot in this cemetery, the Town charges such dealer or the owner who purchases from that dealer, a setting charge for the right to set a marker in the cemetery. The charge is specified in different amounts according to the type of memorial that is sold."

The fact that 30% of such charge is allocated to the Perpetual Care Fund with remainder going to the General Fund cannot change the character of the charge as a method of creating an advantage to the town in its commercial enterprise of selling and setting markers, nor can it gain support from the statute which permits the creation of a Perpetual Care Fund. That statute limits the right to make the charge to the price fixed for the lot, a right which Mooresville has exercised; and this ordinance expressly provides that the Perpetual Care Fund shall not be used for the maintenance of grave markers.

The Legislature may authorize a municipal corporation to engage in a business for public benefit and to extend those services to citizens beyond its corporate limits. *Kennerly v. Dallas*, 215 N.C. 532, 2 S.E. 2d 538. Nonetheless, as said in *Grimesland v. Washington*, 234 N.C. 117, 66 S.E. 2d 794; "But this legislative authority would not be regarded as conferring the right to exclude competition in the territory served. Having the right to engage in this business gives no exclusive franchise . . ."

As said in *Ohio v. Helvering*, 292 US 360, 78 L ed 1307: "When a state enters the market place seeking customers it divests itself of its *quasi* sovereignty *pro tanto*, and takes on the character of a trader . . ."

Application of the rule is well illustrated in *Slaughter v. O'Berry*, 126 N.C. 181. There the municipality sought to imply authority to secure an economic advantage from specific authorization to engage in a particular business. Here specific authority to engage in the commercial enterprise has not been granted.

The stringency with which the rule limiting the application of a grant of authority to a municipality to engage in business for econo-

mic gain as generally applied is illustrated by *McRae v. Concord,* 108 A.L.R. 1450 with annotations; *Taylor v. Dimmitt,* 98 A.L.R. 995; notes to *Andrews v. South Haven,* Ann. Cas. 1918B 104.

We find no statute which in our opinion impliedly gives the town the authority claimed. Grave constitutional questions would be raised by any such statute.

Since the town was without authority to enact the challenged portion of the ordinance, it follows that noncompliance with this provision is not criminal.

Reversed.

PARKER, J.,   not sitting.