STATE OF NORTH CAROLINA v. JOHN S. HORD.

(Filed 7 April, 1965.)

**1. Municipal Corporations § 4—**

A municipal corporation has only such powers as are granted to it by its charter and by the general law, together with such powers as are necessarily implied from those given.

**2. Municipal Corporations § 7—**

A municipal corporation is delegated power to appoint police officers having the same authority to make arrests and execute criminal process within the municipal limits as is vested by law in a sheriff. G.S. 160-20, G.S. 160-21.

**3. Same; Public Officers § 1—**

A chief of police, as well as a policeman, when duly appointed pursuant to statutory authority is charged with the duty of enforcing the ordinances of the municipality and the criminal laws of the State within the limits of the municipality, and therefore is an officer within the meaning of G.S. 14-230.

**4. Public Officers § 1—**

The essential difference between a public office and a mere employment is that the incumbent of a public office is charged with duties involving the exercise of some portion of the sovereign power.

**5. Indictment and Warrant § 9—**

Ordinarily an indictment for a statutory offense may charge the offense in the language of the statute, but if the statute does not set forth with sufficient certainty all of the essential elements necessary to constitute the offense so as to inform defendant of the exact charge, enable him to prepare his defense, support a plea of former jeopardy to a subsequent prosecution for the same offense, and enable the court upon conviction to pronounce sentence, the language of the statute must be supplemented so as to provide this certainty.

**6. Public Offices § 11—**

An indictment charging the chief of police or a police officer of a municipality with unlawfully, wilfully and corruptly refusing to discharge his duty to investigate and bring to prosecution a named person for maintaining a house of prostitution, without charging that such house of prostitution was maintained within the jurisdiction of the municipal police department, is fatally defective.

**7. Same—**

An indictment charging that the chief of police or a police officer of a municipality did unlawfully, wilfully and corruptly omit to discharge his duties to investigate and bring to prosecution a named person for maintaining a house of prostitution on a designated street within the city, sufficiently charges a violation of G.S. 14-230 by the officer, since it charges a failure of the officer to act in regard to a violation of law within the jurisdiction of the municipal police department. G.S. 14-204.

**8. Same—**

An indictment of the chief of police or a police officer for unlawfully, wilfully and corruptly failing to investigate a designated tourist home and the occupants thereof at a designated locality, without averring facts disclosing the reason or necessity for such investigation, is insufficient to charge a violation of G.S. 14-230.

**9. Same—**

An indictment charging the chief of police with unlawfully, wilfully and corruptly failing to discharge a duty of his office in that he failed to investigate the handling and failure of his officers to make an arrest in regard to breaking and entering a designated store "all to the knowledge" of the said chief of police, without alleging any mishandling of the case or any reason why the chief of police should have concerned himself particularly with the case, *held* not to charge a violation of G.S. 14-230, since an administrative department head is not under duty to supervise each activity of each member of his department.

**10. Same—**

An indictment charging a chief of police with unlawfully, wilfully and corruptly failing to exercise proper supervision, proper control, proper discipline and failing to investigate various activities of members of the police department of a city, fails to charge a violation of G.S. 14-230.

**11. Same—**

An indictment charging a chief of police or police officer with unlawfully, wilfully and corruptly failing to investigate and bring to prosecution for gambling persons in a designated block of a city, without averring what people were guilty of gambling, does not charge a violation of G.S. 14-230.

**12. Same—**

An indictment charging a chief of police with unlawfully, wilfully and corruptly neglecting to cite a named police officer before the Civil Service Commission prior to the time of the resignation of such officer, without averring that the officer had committed any crime or other infraction of law which would justify or require the chief to report such officer to the Civil Service Commission before the time of his resignation, fails to charge a violation of G.S. 14-230.

APPEAL by the State from *Latham, S.J.*, 14 December 1964 Conflict Criminal Session of MECKLENBURG.

The court below heard a motion to quash the sixteen bills of indictment returned against the defendant on two grounds: (1) That these bills are defective in that they "(F)ail to allege lucidly and accurately all the essential elements of the offense endeavored to be charged so as to enable the defendant to identify the offense with which he is sought to be charged; to protect the defendant from being twice put in jeopardy for the same offense; to enable the defendant to prepare for trial; and to enable the court on conviction or plea of *nolo contendere* or guilty to pronounce sentence according to the rights in the case"; and (2) that the defendant is not a public official within the purview of G.S. 14-230, the statute which these bills purport to charge the defendant with having violated.

The first bill of indictment listed in each of the numbered paragraphs set out below charges the defendant with having *wilfully* failed to discharge his official duties with respect to the matters charged therein, and the second bill of indictment charges the defendant with having *corruptly* failed to discharge his official duties with respect to the same matters. The formal parts of these bills, which appear in each of them, will be copied only in paragraph (1) below. The remaining pertinent parts of the sixteen bills of indictment are as follows:

(1) Bills Nos. 42968 and 42969 charge the defendant with failing "to investigate and bring to prosecution, Mary Trapp for setting up, maintaining and operating a place, structure and building for the purpose of prostitution and assignation, all to the knowledge of John S. Hord and to the injury of the public and the people of the City of Charlotte, North Carolina, all in violation of his oath and public duty, against the form of the statute in such

case made and provided and against the peace and dignity of the State."

(2)   Bills Nos. 42970 and 42975 charge the defendant with failing "to investigate and bring to prosecution Babe Broadway for setting up, maintaining and operating a place, structure and building for the purpose of prostitution and assignation on East Ninth Street, Charlotte, North Carolina * * *."

(3)   Bills Nos. 42971 and 42972 charge the defendant with failing "to investigate the Queens Tourist Home and the occupants thereof, 517 West Ninth Street, Charlotte, North Carolina * * *."

(4)   Bills Nos. 42973 and 42974 charge the defendant with failing "to investigate the handling and failure to make arrest in the cases of breaking and entering at Louis and Son's Dry Goods Store, Charlotte, North Carolina * * *."

(5)   Bills Nos. 42977 and 42976 charge the defendant with failing to exercise "the proper supervisions, proper control, proper discipline, thorough investigation of activities, and thorough inspection of the various activities of various members of the Police Department of the City of Charlotte, North Carolina * * *."

(6)   Bills Nos. 42978 and 42979 charge the defendant with failing to discharge his official duties in that he omitted to investigate "into the handling of the case of State of North Carolina against Herbert P. Cook on the charge of did steal, take and carry away 1208 gallons of Gulf No-Nox gasoline the property of Gulf Oil Corporation, * * * of the value of more than $200.00, to wit: $366.02, he, the said John S. Hord being the Chief of Police of the City of Charlotte, North Carolina, responsible for and in charge of all investigations by the police officers of the City Police Department, of the City of Charlotte, North Carolina * * *."

(7)   Bills Nos. 42980 and 42981 charge the defendant with having failed in his duty "to investigate and bring to prosecution for gambling, persons in the 4100 block of North Tryon Street, Charlotte, North Carolina * * *."

(8)   Bills Nos. 42982 and 42983 charge the defendant with having neglected "to cite police officer Bernie W. Stogner of the Police Department of the City of Charlotte, North Carolina, before the Civil Service Commission of Charlotte, North Carolina, before his resignation on September 14, 1964 * * *."

The motion to quash each of the sixteen bills of indictment was allowed and the State appeals, assigning error.

*Attorney General Bruton, Deputy Attorney General Harry W. Mc-Galliard, Asst. Attorney General James F. Bullock for the State, appellant.*

*Bailey & Booe for defendant appellee.*

DENNY, C.J.  At the threshold of this appeal, we must determine whether or not the position of the defendant as Chief of Police of the City of Charlotte is an office within the meaning of G.S. 14-230, which reads as follows:

"If any clerk of any court of record, sheriff, justice of the peace, recorder, prosecuting attorney of any recorder's court, county commissioner, county surveyor, coroner, treasurer, constable or official of any of the State institutions, or of any county, city or town, shall willfully omit, neglect or refuse to discharge any of the duties of his office, for default whereof it is not elsewhere provided that he shall be indicted, he shall be guilty of a misdemeanor. If it shall be proved that such officer, after his qualification, willfully and corruptly omitted, neglected or refused to discharge any of the duties of his office, or willfully and corruptly violated his oath of office according to the true intent and meaning thereof, such officer shall be guilty of misbehavior in office, and shall be punished by removal therefrom under the sentence of the court as a part of the punishment for the offense, and shall also be fined or imprisoned in the discretion of the court."

First, let us examine the history of the foregoing statute. A statute containing provisions similar to those in the first sentence of the above statute was enacted in Chapter 32, § 107, Battle's Revisal of 1873, amended and codified in The Code of North Carolina, 1883, Vol. I, § 1090, the latter statute reading as follows:

"If any clerk, sheriff, justice of the peace, or any other officer, who is required, in entering upon his office, to take an oath of office, shall wilfully omit, neglect or refuse to discharge any of the duties of his office, for default whereof it is not elsewhere provided that he shall be indicted, the clerk or other officer so offending shall be guilty of a misdemeanor. And if it shall be proved, that any such officer, after his qualification, shall have violated his said oath, and willingly and corruptly have done anything contrary to the true intent and meaning thereof, such officer shall be guilty of misbehaviour in office, and shall be punished by removal therefrom under the sentence of the court as a part of the punishment for the offence; and shall also be fined and imprisoned, in the discretion of the court."

Section 1090 was superseded in 1901 by Chapter 270, § 2, of the Public Laws of 1901, and codified in the Revisal of 1905, in § 3592, with substantially the same provisions which exist in our present statute. See also C.S. 4384.

It will be noted that the words, "who is required, in entering upon his office, to take an oath of office," were omitted in Chapter 270, § 2, of the Public Laws of 1901, codified in the Revisal of 1905, in § 3592. The General Assembly undoubtedly felt that such words were mere surplusage in light of the statement in the second sentence in the statute, to wit: "(O)r willfully and corruptly violated his oath of office according to the true intent and meaning thereof * * *."

A municipal corporation has only such powers as are granted to it by the General Assembly in its specific charter or by the general laws of the State applicable to all municipal corporations, or such powers as are necessarily implied by those given. G.S. 160-1 through G.S. 160-509; *Starbuck v. Havelock,* 252 N.C. 176, 113 S.E. 2d 278; *S. v. Mc-Graw,* 249 N.C. 205, 105 S.E. 2d 659; *Laughinghouse v. New Bern,* 232 N.C. 596, 61 S.E. 2d 802; *Stephenson v. Raleigh,* 232 N.C. 42, 59 S.E. 2d 195.

The power of a municipal corporation to appoint policemen is given in G.S. 160-20. *Green v. Kitchin,* 229 N.C. 450, 50 S.E. 2d 545. Moreover, G.S. 160-21 provides: "A policeman shall have the same authority to make arrests and to execute criminal process, within the town limits, as is vested by law in a sheriff."

The case of *Barlow v. Benfield,* 231 N.C. 663, 58 S.E. 2d 637, was an action in the nature of *quo warranto* to determine the right of Benfield to hold the office of Chief of Police of Granite Falls. G.S. 160-25 at that time provided: "No person shall be mayor, commissioner, intendant of police, alderman or other chief officer of any city or town unless he shall be a qualified voter therein." Benfield was not a qualified voter of Granite Falls. Devin, J., later C.J., speaking for the Court, said: "The office of chief of police of an incorporated town, as Granite Falls is admitted to be, is a public office. *Foard v. Hall,* 111 N.C. 369, 16 S.E. 420."

G.S. 160-25 was rewritten in Chapter 24 of the 1951 Session Laws of North Carolina to read as follows: "No person shall be mayor, commissioner, councilman, or alderman of any city or town unless he shall be a qualified voter therein." This change in the law, however, in our opinion, has no bearing whatever on the question as to whether or not a chief of police or a policeman is a public officer. The statute deals merely with the qualification of the appointee and not with the character of the office.

In the case of *Foard v. Hall,* 111 N.C. 369, 16 S.E. 420, this Court held that the office of chief of police is such an office that a *quo warranto* might be brought to try the title thereto.

In *McIlhenny v. Wilmington,* 127 N.C. 146, 37 S.E. 187, 50 L.R.A. 470, this Court held that a policeman is an officer of the State.

Some jurisdictions in this country hold that policemen are officers of the state because they exercise the sovereign powers of the state in performing their duties as policemen; others hold that such policemen are officers of the municipality because they are charged with the duty to enforce the ordinances of the municipality. Some others hold that policemen are merely employees of the municipality. The statutory provisions involved in the different jurisdictions in this country vary widely. However, in our opinion, a chief of police as well as a policeman, when duly appointed to such position, pursuant to statutory authority, is an officer within the meaning of G.S. 14-230, and we so hold.

It is not the method by which a policeman becomes a member of the police force of a municipality that determines his status but the nature and extent of his duties and responsibilities with which he is charged under the law. *Cornet v. Chattanooga,* 165 Tenn. 563, 56 S.W. 2d 742.

To constitute an office, as distinguished from employment, it is essential that the position must have been created by the constitution or statutes of the sovereignty, or that the sovereign power shall have delegated to an inferior body the right to create the position in question. Anno. — Office and Employment — Distinction, 140 A.L.R. 1079.

An essential difference between a public office and mere employment is the fact that the duties of the incumbent of an office shall involve the exercise of some portion of the sovereign power. 42 Am. Jur., Public Officers, § 13, page 891; 93 A.L.R. 337 Anno. — Office and Employment — Distinction; Sixth Decennial Digest, 1946-1956, Vol. 24, Officers, Key Number 1, where the authorities are collected from 21 jurisdictions which support the above view, and none are cited to the contrary.

In view of the fact that a chief of police as well a policeman is charged with the duty to enforce the ordinances of the city or town in which he is appointed to serve, as well as the criminal laws of the state within the limits of such city or town, such chief of police or policeman is an officer of such city or town within the meaning of G.S. 14-230, and this view is in accord with the following authorities. McQuillin on Municipal Corporations, Vol. 16, § 45.11; *S. v. Stone,* 240 Ala. 677, 200 So. 756; *S. v. Kurtz,* 78 Ariz. 215, 278 P. 2d 406; *Brown v. Boyd,* 33 Cal. A. 2d 416, 91 P. 2d 926; *Temple v. City of New Brittain,* 127 Conn. 170, 15 A. 2d 318; *S. v. Glenn,* 39 Del. 584, 4 A. 2d 366; *Curry v. Hammond,* 154 Fla. 63, 16 So. 2d 523; *Buchholtz v. Hill,* 178

Md. 280, 13 A. 2d 348; *Olson v. City of Highland Park*, 312 Mich. 688, 20 N.W. 2d 773; *Duncan v. Board of Fire and Police Com'rs.*, 131 N.J.L. 443, 37 A. 2d 85; *Canteline v. McClellan*, 282 N.Y. 166, 25 N.E. 2d 972; *S. v. Scott*, 95 Ohio App. 197, 118 N.E. 2d 426; *Morris v. Parks*, 145 Ore. 481, 28 P. 2d 215; *Mann v. City of Lynchburg*, 129 Va. 453, 106 S.E. 371; *National L. R. Bd. v. Jones & Laughlin Steel Corp.*, 331 U.S. 416, 91 L. Ed. 1575.

In the last cited case, the question was whether certain employees of the defendant corporation who, at its request, had been appointed special policemen to guard its plants during wartime, were still employees of the company and entitled to maintain their rights in the labor union in which they were members. The Labor Board held their rights were not impaired by reason of their having been deputized as special policemen. The Board was overruled and appealed to the Supreme Court of the United States which reversed the decision of the lower court. The Court said:

"We find it impossible to say that the Board is wrong in adopting this policy as to deputized guards. It is a common practice in this country for private watchmen or guards to be vested with the powers of policemen, sheriffs or peace officers to protect the private property of their private employers. And when they are performing their police functions, they are acting as public officers and assume all the powers and liabilities attaching thereto. *Thornton v. Missouri P. R. Co.*, 42 Mo. App. 58; *Dempsey v. New York C. & H. R. R. Co.*, 146 N.Y. 290, 40 N.E. 867; *McKain v. Baltimore & O. R. Co.*, 65 W. Va. 233, 64 S.E. 18, 23 L.R.A. N.S. 289, 131 Am. St. Rep. 964, 17 Ann. Cas. 634; *Neallus v. Hutchinson Amusement Co.*, 126 Me. 469, 139 A. 671, 55 A.L.R. 1191. But it has never been assumed that such deputized guards thereby cease to be employees of the company concerned or that they become municipal employees for all purposes. * * *

"The court below pointed out that the Ohio law on the status and duties of special policemen is in accord with the general rule which we have noted. In other words, special policemen are public officers when performing their public duties. *New York, C. & St. L. R. Co. v. Fieback*, 87 Ohio St. 254, 100 N.E. 889, 43 L.R.A. N.S. 1164; *Pennsylvania R. Co. v. Deal*, 116 Ohio St. 408, 156 N.E. 502. But none of the Ohio cases attempts to say that the public status of special policemen destroys completely their private status as employees of individual companies. * * *"

Since we have reached the conclusion that a chief of police as well as a policeman is an officer of the municipality which engages his ser-

vices, within the meaning of the provisions of G.S. 14-230, we must now consider whether the sixteen bills of indictment returned against the defendant, or any of them, are valid and should not have been quashed.

In the case of *S. v. Greer*, 238 N.C. 325, 77 S.E. 2d 917, Parker, J., speaking for the Court, said:

> "The authorities are in unison that an indictment, whether at common law or under a statute, to be good must allege lucidly and accurately all the essential elements of the offense endeavored to be charged. The purpose of such constitutional provisions is: (1) such certainty in the statement of the accusation as will indentify the offense with which the accused is sought to be charged; (2) to protect the accused from being twice put in jeopardy for the same offense; (3) to enable the accused to prepare for trial, and (4) to enable the court, on conviction or plea of *nolo contendere* or guilty to pronounce sentence according to the rights of the case. *S. v. Cole*, 202 N.C. 592, 163 S.E. 594; *S. v. Gregory*, 223 N.C. 415, 27 S.E. 2d 140; *S. v. Morgan*, 226 N.C. 414, 38 S.E. 2d 166; *S. v. Miller*, 231 N.C. 419, 57 S.E. 2d 392; *S. v. Gibbs*, 234 N.C. 259, 66 S.E. 2d 883. * * *
>
> "The general rule in this State and elsewhere is that an indictment for a statutory offense is sufficient, if the offense is charged in the words of the statute, either literally or substantially, or in equivalent words. * * * This rule does not apply where the words of the statute do not, without uncertainty or ambiguity, set forth all the essential elements necessary to constitute the offense sought to be charged in the indictment, so as to inform the defendant of the exact charge of which he is accused to enable him to prepare his defense, to plead his conviction or acquittal as a bar to further prosecution for the same offense, and upon conviction to enable the court to pronounce sentence. In such a situation the statutory words must be supplemented in the indictment by other allegations which explicitly and accurately set forth every essential element of the offense with such exactitude as to leave no doubt in the minds of the accused and the court as to the specific offense intended to be charged. * * *"

Bills Nos. 42968 and 42969 charge that the defendant unlawfully, wilfully and corruptly did omit and refuse to discharge one of his official duties to investigate and bring to prosecution Mary Trapp, for setting up, maintaining and operating a place, structure and building for the purpose of prostitution and assignation. However, there is nothing in these bills alleging that Mary Trapp maintained such a place of prostitution within the City of Charlotte or in Mecklenburg County,

within the jurisdiction of the Police Department of the City of Charlotte. In our opinion, such bills are defective and were properly quashed.

Bills Nos. 42970 and 42975 charge that the defendant did unlawfully, wilfully and corruptly omit to discharge one of his official duties as Chief of Police of the City of Charlotte, said duty being to investigate and bring to prosecution Babe Broadway, for setting up, maintaining and operating a place, structure and building for the purpose of prostitution and assignation, on East Ninth Street, Charlotte, North Carolina, all to the knowledge of the defendant, *et cetera.*

G.S. 14-204 provides that it is "* * * unlawful: 1. To keep, set up, maintain, or operate any place, structure, building or conveyance for the purpose of prostitution or assignation."

These bills of indictment charge that the defendant knew that Babe Broadway was operating a place of prostitution in violation of the law, on East Ninth Street in the City of Charlotte, and that he wilfully and corruptly did omit to investigate and bring to prosecution Babe Broadway for such violation. We think these bills of indictment adequately informed the defendant as to the specific offenses intended to be charged. Therefore, we hold that these bills are valid and should not have been quashed.

Bills Nos. 42971 and 42972 charge that the defendant did unlawfully, wilfully and corruptly fail to investigate the Queens Tourist Home and the occupants thereof, 517 West Ninth Street, Charlotte, North Carolina. The reason or necessity for such investigation is undisclosed. Certainly no offense is charged against the defendant in these bills, and they were properly quashed.

Bills Nos. 42973 and 42974 charge that the defendant unlawfully, wilfully and corruptly failed to discharge the duties of his office in that he did not "investigate the handling and failure to make arrest in the cases of breaking and entering at Louis and Son's Dry Goods Store, Charlotte, North Carolina, all to the knowledge of John S. Hord * * *."

These bills do not allege that there was any mishandling of the breaking and entering in the Louis and Son's Dry Goods Store cases. The indictments do not allege that there was any reason why the defendant should have concerned himself particularly with those cases. It is well known that the head of an administrative department does not personally supervise each activity of the members of his department. If he were required to investigate and handle each case himself, there would be no reason for having subordinates. Until the State can allege that there was some reason for the Chief of Police to investigate these cases, or that to his knowledge there was some mishandling of the cases that required his personal attention, then it is not per-

ceived how he was derelict in his duties in failing to become personally involved in the cases. These bills of indictment do not allege any such circumstances; therefore, we hold they were properly quashed.

Bills Nos. 42977 and 42976 charged that the defendant did unlawfully, wilfully and corruptly fail to exercise the proper supervision, proper control, proper discipline, thorough investigation of activities, and thorough inspection of the various activities of various members of the Police Department of the City of Charlotte.

There is nothing charged in these bills to indicate any criminal neglect on the part of the defendant. The disclosures in these bills, if true, tend to suggest the need for an investigation by the defendant's superiors and not a criminal proceeding. In our opinion, these bills were properly quashed.

Bills Nos. 42978 and 42979 were properly quashed for the reasons stated with respect to bills Nos. 42973 and 42974. Moreover, the conviction of H. P. Cook for the theft of the property described in said bills was upheld by this Court on 24 February 1965, in the case of *S. v. Cook,* 263 N.C. 730, 140 S.E. 2d 305.

Bills Nos. 42980 and 42981 charge that the defendant unlawfully, wilfully and corruptly failed in his duty to investigate and bring to prosecution for gambling, persons in the 4100 block of North Tryon Street, Charlotte, North Carolina. What people are gambling on North Tryon Street in the City of Charlotte? Neither of these bills meets the requirements for a valid bill of indictment as set out in *S. v. Greer, supra,* and they were properly quashed.

Bills Nos. 42982 and 42983 charge the defendant with unlawfully, wilfully and corruptly having neglected to cite police officer Bernie W. Stogner of the Police Department of the City of Charlotte, North Carolina, before the Civil Service Commission of Charlotte, before his resignation on 14 September 1964.

There is no indication that Stogner had committed any crime or any other infraction of the law that would justify or require the Chief of Police of the City of Charlotte to report him to the Civil Service Commission of Charlotte prior to the time of his resignation; therefore, these bills were properly quashed.

The ruling of the court below is reversed in part and affirmed in part, as hereinabove indicated.

Reversed in part.

Affirmed in part.