ANITA FAYE ISENHOUR, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF ANTHONY DARRELL ISENHOUR, JR., DECEASED V. KIMBERLY ANN HUTTO, DONALD STEPHEN HUTTO, ROBBIE FAYE MORRISON, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS A SCHOOL CROSSING GUARD, AND THE CITY OF CHARLOTTE, A NORTH CAROLINA MUNICIPAL CORPORATION

No. 305PA98

(Filed 23 July 1999)

## 1. Cities and Towns— public duty doctrine—inapplicability to school crossing guard

The public duty doctrine did not shield a city and a school crossing guard, in her official capacity, from liability for alleged negligence of the crossing guard in the death of an elementary school student who was struck by an automobile after the guard directed him to cross the street since a school crossing guard is employed to provide a protective service to an identifiable group of children; the relationship between the crossing guard and the children is direct and personal; the dangers are immediate and foreseeable; and the city, by providing school crossing guards, had undertaken an affirmative, but limited, duty to protect certain children at certain times and in certain places.

## 2. Public Officers and Employees— school crossing guard—negligence—individual capacity—statement of claim

Plaintiffs' complaint sufficiently pled a claim against defendant school crossing guard in her individual capacity for negligently directing an elementary school student across the street where the complaint, as reflected within the caption, body, and claim for relief, indicates a suit against the crossing guard both individually and in her official capacity. Whether plaintiffs' allegations relate to acts performed outside the scope of defendant's official duties is not relevant to the determination of whether the defendant is being sued in an official or individual capacity.

## 3. Public Officers and Employees— school crossing guard—public employee—liability for negligence

Plaintiffs sufficiently alleged that the duties of defendant school crossing guard are ministerial in nature so that the crossing guard is a public employee, rather than a public official, and is thus liable in her individual capacity for ordinary negligence in the performance of her duties.

Chief Justice MITCHELL and Justice PARKER concur in the result only.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 129 N.C. App. 596, 501 S.E.2d 78 (1998), affirming in part and reversing in part an order signed 8 April 1997 by Gardner, J., in Superior Court, Mecklenburg County. Heard in the Supreme Court 12 February 1999.

*Bailey, Patterson, Caddell, Hart & Bailey, P.A., by Allen A. Bailey and Michael A. Bailey, for plaintiff-appellant and -appellee.*

*Dean & Gibson, L.L.P., by Rodney Dean and Barbara J. Dean; and Sara Smith Holderness for defendant-appellants and -appellees Morrison and City of Charlotte.*

MARTIN, Justice.

Plaintiff, Anita Faye Isenhour, administratrix of the estate of her deceased son, Anthony Darrell Isenhour, Jr. (Anthony), initiated this action against defendants for the personal injuries and wrongful death sustained by Anthony when he was negligently struck by an automobile operated by defendant Kimberly Ann Hutto (Hutto).

Plaintiff made the following allegations in this action. On 8 October 1991, after school had recessed for the day, Anthony, age seven, walked to the northeast corner of The Plaza (intersection of Wilann Drive and Lakedell Drive) in Charlotte, North Carolina. At The Plaza, Anthony stopped and waited for directions to cross from the school crossing guard, defendant Robbie Faye Morrison (Morrison). After Morrison directed Anthony to walk across The Plaza, he was struck by an automobile operated by Hutto. At the time of the accident, Anthony was within the marked pedestrian crosswalk area. Anthony sustained severe head and bodily injuries and subsequently died on 11 June 1995 as a result of physical complications caused by the accident.

On 23 December 1993 plaintiff filed a complaint against defendants Kimberly Ann Hutto and Donald Stephen Hutto for negligently causing personal injuries to her son, Anthony. In the course of filing four amended complaints, plaintiff asserted a new claim for wrongful death and named additional defendants: Morrison, individually and in her official capacity, and the City of Charlotte (City). In their answer

**ISENHOUR v. HUTTO**

[350 N.C. 601 (1999)]

defendants City and Morrison, in her official capacity, denied liability and asserted the defenses of governmental immunity, lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted. Morrison, in her individual capacity, moved to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.

On 8 April 1997 the trial court denied defendants' Rule 12(b)(6) motion to dismiss the claims against the City and Morrison, in her official capacity, on the ground of the public duty doctrine. The trial court also denied the Rule 12(b)(6) motion to dismiss the claim asserted against Morrison in her individual capacity. The City and Morrison appealed to the Court of Appeals.

The Court of Appeals affirmed the trial court's denial of defendants' motion to dismiss based on the public duty doctrine, but reversed the trial court's denial of the motion to dismiss plaintiff's claims against Morrison in her individual capacity. *Isenhour v. Hutto*, 129 N.C. App. 596, 603, 501 S.E.2d 78, 83 (1998).

In analyzing the first issue, the Court of Appeals noted that under the public duty doctrine, there is no tort duty to protect individuals from harm by third parties when a state or municipal governmental entity is acting for the benefit of the general public. *Id.* at 597, 501 S.E.2d at 80 (citing *Braswell v. Braswell*, 330 N.C. 363, 410 S.E.2d 897 (1991)); *see Stone v. N.C. Dep't of Labor*, 347 N.C. 473, 482, 495 S.E.2d 711, 717, *cert. denied*, ―― U.S. ――, 142 L. Ed. 2d 449 (1998). In finding the public duty doctrine inapplicable, the Court of Appeals stated:

> Here, the relevant relationship was one between a crossing guard and an elementary school student. Unlike police and governmental agencies, who serve the public at large, a crossing guard's primary function is to ensure the safety of a specific individual—each child who comes to the crossing guard seeking to cross the street. Thus, the theoretical argument for the public duty doctrine has no applicability to the facts of the present case.

> . . . .

> . . . Here, the imposition of liability on crossing guards implicates no such threat of overwhelming liability, given the limited range of services provided by them and the relatively smaller segment of the population served.

*Isenhour*, 129 N.C. App. at 600-01, 501 S.E.2d at 81. Consequently, the Court of Appeals declined to apply the public duty doctrine to shield the City and Morrison, in her official capacity, from tort liability for Morrison's negligence in directing Anthony across the street. *Id.* at 602, 501 S.E.2d at 82.

In reversing the trial court's order denying Morrison's motion to dismiss in her individual capacity, the Court of Appeals concluded a crossing guard is a public official rather than a public employee. *Id.* at 603, 501 S.E.2d at 82-83. " '[A] public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto.' However, a public employee may be held individually liable." *Id.* at 602, 501 S.E.2d at 82 (quoting *Smith v. Hefner*, 235 N.C. 1, 7, 68 S.E.2d 783, 787 (1952)) (citation omitted).

The Court of Appeals found Morrison's job duties analogous to the duties of a police officer. *Id.* at 603, 501 S.E.2d at 82-83. "As a police officer is a public official, . . . we believe a crossing guard should be so treated." *Id.* at 603, 501 S.E.2d at 83. Accordingly, the Court of Appeals held "the crossing guard was not susceptible to suit in her individual capacity for ordinary acts of negligence." *Id.*

On 5 November 1998 we allowed defendants' petition for discretionary review to determine whether the Court of Appeals properly applied the public duty doctrine to the instant facts and plaintiff's petition for discretionary review to determine whether the Court of Appeals properly concluded Morrison was not liable for negligence in her individual capacity.

When reviewing the denial of a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in plaintiff's complaint are treated as true. *Cage v. Colonial Bldg. Co., Inc. of Raleigh*, 337 N.C. 682, 683, 448 S.E.2d 115, 116 (1994). "A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint by presenting 'the question whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief can be granted under some [recognized] legal theory.' " *Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus.*, 336 N.C. 438, 442, 444 S.E.2d 423, 425-26 (1994) (quoting *Lynn v. Overlook Dev.*, 328 N.C. 689, 692, 403 S.E.2d 469, 471 (1991)) (alteration in original). A motion to dismiss pursuant to Rule 12(b)(6) should not be granted " *'unless it appears to a certainty that plaintiff is entitled to no relief under*

*any state of facts which could be proved in support of the claim.' "
Sutton v. Duke,* 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (quoting
2A James W. Moore, *Moore's Federal Practice* § 12.08 (2d ed. 1968))
(alteration in original).

[1] We first address the question of whether the public duty doctrine
shields the City and Morrison, in her official capacity, from liability
for the alleged negligent acts of Morrison in her capacity as a school
crossing guard.

We recognized and applied the common law public duty doctrine
in *Braswell v. Braswell,* 330 N.C. 363, 410 S.E.2d 897. There, Lillie
Braswell (Lillie) informed the Pitt County sheriff that she suspected
her husband was planning to murder her. *Id.* at 367, 410 S.E.2d at 900.
The sheriff comforted Lillie and told her she would be protected. *Id.*
at 370, 410 S.E.2d at 901. Less than a week later, Lillie was murdered
by her husband. *Id.* at 369, 410 S.E.2d at 901. Her estate subsequently
asserted a claim against the sheriff for negligently failing to protect
the decedent. *Id.* at 366, 410 S.E.2d at 899. At trial, the trial court
granted the sheriff's motion for a directed verdict. *Id.* at 367, 410
S.E.2d at 899.

This Court in *Braswell* stated:

> The general common law rule, known as the public duty doc-
> trine, is that a municipality and its agents act for the benefit of
> the public, and therefore, there is no liability for the failure to fur-
> nish police protection to specific individuals. This rule recog-
> nizes the limited resources of law enforcement and refuses to
> judicially impose an overwhelming burden of liability for failure
> to prevent every criminal act.

*Id.* at 370-71, 410 S.E.2d at 901 (citation omitted). " 'For the courts to
proclaim a new and general duty of protection in the law of tort, even
to those who may be the particular seekers of protection based on
specific hazards, could and would inevitably determine how the lim-
ited police resources . . . should be allocated and without predictable
limits.' " *Id.* at 371, 410 S.E.2d at 901 (quoting *Riss v. City of New
York,* 22 N.Y.2d 579, 582, 240 N.E.2d 860, 860-61, 293 N.Y.S.2d 897, 898
(1968)) (alteration in original).

In addition to recognizing the general common law rule, this
Court recognized two well-established exceptions to the public duty
doctrine:

(1) where there is a special relationship between the injured party and the police, for example, a state's witness or informant who has aided law enforcement officers; and (2) "when a municipality, through its police officers, creates a special duty by promising protection to an individual, the protection is not forthcoming, and the individual's reliance on the promise of protection is causally related to the injury suffered."

*Id.* at 371, 410 S.E.2d at 902 (quoting *Coleman v. Cooper*, 89 N.C. App. 188, 193-94, 366 S.E.2d 2, 6, *disc. rev. denied*, 322 N.C. 834, 371 S.E.2d 275 (1988)).

This Court found neither exception applicable to the facts present in *Braswell. Id.* at 372, 410 S.E.2d at 902. No evidence indicated the sheriff expressly or impliedly promised Lillie protection which would constitute a "special duty." *Id.* The Court noted that, arguably, the sheriff's promise to protect Lillie when she was driving to and from work may have been specific enough to be classified under the "special duty" exception. *Id.* Lillie was not, however, killed while driving to or from work, and thus her alleged reliance on the sheriff's promise could not be considered to have caused her death. *Id.* "In sum, the 'special duty' exception to the general rule against liability of law enforcement officers for criminal acts of others is a very narrow one; it should be applied only when the promise, reliance, and causation are manifestly present." *Id.*

We next addressed the public duty doctrine in *Stone v. N.C. Dep't of Labor*, 347 N.C. 473, 495 S.E.2d 711. In that case plaintiffs sued the North Carolina Department of Labor and its Occupational Safety and Health Division pursuant to the Tort Claims Act, N.C.G.S. §§ 143-291 to -300.1 (1993) (amended 1994), for injuries and deaths resulting from a fire at the Imperial Foods Products plant in Hamlet, North Carolina. *Stone*, 347 N.C. at 476, 495 S.E.2d at 713. Plaintiffs alleged defendants had a duty under the Occupational Safety and Health Act of North Carolina (OSHANC), N.C.G.S. §§ 95-126 to -155 (1993) (amended 1997), to inspect the plant and, therefore, their alleged failure to inspect until after the fire constituted a breach of duty. *Stone*, 347 N.C. at 477, 495 S.E.2d at 713.

In *Stone* we concluded, "[t]he general common law rule provides that governmental entities, when exercising their statutory powers, act for the benefit of the general public and therefore have no duty to protect specific individuals." *Id.* at 482, 495 S.E.2d at 716. Accordingly, the governmental entity is not liable for negligence for

failure to carry out statutory duties. *Id.* In support of our holding, we reasoned that application of the public duty doctrine to the Department of Labor was a logical extension of the same policy considerations present in *Braswell*: "to prevent 'an overwhelming burden of liability' on governmental agencies with 'limited resources.' " *Id.* at 481, 495 S.E.2d at 716 (quoting *Braswell*, 330 N.C. at 370-71, 410 S.E.2d at 901). Accordingly, this Court concluded the public duty doctrine shielded defendants from liability. *Id.* at 483, 495 S.E.2d at 717.

In *Hunt v. N.C. Dep't of Labor*, 348 N.C. 192, 499 S.E.2d 747 (1998), our most recent examination of the public duty doctrine, plaintiff was injured at an amusement park while riding a go-kart. *Id.* at 194-95, 499 S.E.2d at 748. Plaintiff sued the Department of Labor under the Tort Claims Act for passing go-karts during an inspection when the go-karts were not in compliance with the North Carolina Administrative Code. *Id.* at 195, 499 S.E.2d at 748. Defendant moved to dismiss on the basis of the public duty doctrine. *Id.* at 195, 499 S.E.2d at 749. Relying on *Stone*, this Court applied the public duty doctrine and determined that "nowhere in the Act did the legislature impose a duty upon defendant to each go-kart customer." *Id.* at 197, 499 S.E.2d at 750. This Court further noted the administrative rules promulgated by the Commissioner of Labor governing the inspection of go-karts similarly did not impose a duty to individual customers. *Id.* at 198, 499 S.E.2d at 751. Finally, this Court in *Hunt* concluded that neither recognized exception to the public duty doctrine applied. *Id.* at 199, 499 S.E.2d at 751. Accordingly, we held the public duty doctrine barred plaintiff's claim. *Id.*

As recognized in *Braswell*, *Stone*, and *Hunt*, the purpose of the public duty doctrine is to prevent " 'an overwhelming burden of liability' on governmental agencies with 'limited resources.' " *Stone*, 347 N.C. at 481, 495 S.E.2d at 716 (quoting *Braswell*, 330 N.C. at 370-71, 410 S.E.2d at 901); *accord Hunt*, 348 N.C. at 199, 499 S.E.2d at 751 (quoting *Sinning v. Clark*, 119 N.C. App. 515, 519-20, 459 S.E.2d 71, 74, *disc. rev. denied*, 342 N.C. 194, 463 S.E.2d 242 (1995)). Imposing liability for the alleged negligence of school crossing guards will not subject the City, or other governmental entities that provide crossing guards, to "an overwhelming burden of liability."

In any event, there is a meaningful distinction between application of the public duty doctrine to the actions of local law enforcement, as in *Braswell*, or of a state agency, as in *Stone* and *Hunt*, and the application of the doctrine to the actions of a school crossing

guard, at issue in the instant case. Unlike the provision of police protection to the general public or the statutory duty of a state agency to inspect various facilities for the benefit of the public, a school crossing guard is employed to provide a protective service to an identifiable group of children. Moreover, the relationship between the crossing guard and the children is direct and personal, and the dangers are immediate and foreseeable.

As the New York Supreme Court, Appellate Division, stated in a somewhat similar case,

> [t]he nature of the duty assumed [by the city] is . . . different from the protection afforded the general public against such hazards as criminal wrongdoing or violations of fire or building codes. This protective duty is carefully limited as to time (hours when the children will be traveling to and from school), place (designated school crossings), beneficiaries (school children) and purpose (safeguard the children at the school crossing and, if necessary, escort them safely across the street).

*Florence v. Goldberg*, 48 A.D.2d 917, 918-19, 369 N.Y.S.2d 794, 797 (1975).

The City, by providing school crossing guards, has undertaken an affirmative, but limited, duty to protect certain children, at certain times, in certain places. The rationale underlying the public duty doctrine is simply inapplicable to the allegations set forth in plaintiff's complaint. Because we conclude that the public duty doctrine does not operate to shield the City and Morrison, in her official capacity, from liability, we affirm the decision of the Court of Appeals on this issue.

[2] We next determine whether plaintiff has sufficiently pled a claim for relief against Morrison in her individual capacity.

First, we determine whether the complaint seeks recovery from Morrison in her official capacity or individual capacity, or both. "A suit against a defendant in his individual capacity means that the plaintiff seeks recovery from the defendant directly; a suit against a defendant in his official capacity means that the plaintiff seeks recovery from the entity of which the public servant defendant is an agent." *Meyer v. Walls*, 347 N.C. 97, 110, 489 S.E.2d 880, 887 (1997).

> "The crucial question for determining whether a defendant is sued in an individual or official capacity is the nature of the relief

ISENHOUR v. HUTTO

[350 N.C. 601 (1999)]

sought, not the nature of the act or omission alleged. If the plaintiff seeks an injunction requiring the defendant to take an action involving the exercise of a governmental power, the defendant is named in an official capacity. If money damages are sought, the court must ascertain whether the complaint indicates that the damages are sought from the government or from the pocket of the individual defendant. If the former, it is an official-capacity claim; if the latter, it is an individual-capacity claim; and if both, then the claims proceed in both capacities."

*Id.* (quoting Anita R. Brown-Graham & Jeffrey S. Koeze, *Immunity from Personal Liability under State Law for Public Officials and Employees: An Update*, Loc. Gov't L. Bull. 67 (Inst. of Gov't, Univ. of N.C. at Chapel Hill), Apr. 1995, at 7).

Because public employees are individually liable for negligence in the performance of their duties, "[w]hether the allegations [in a complaint] relate to actions outside the scope of defendant's official duties is not relevant in determining whether the defendant is being sued in his or her official or individual capacity." *Meyer*, 347 N.C. at 111, 489 S.E.2d at 888. This Court in *Meyer* examined plaintiff's complaint and determined plaintiff was suing defendants in both their official and individual capacities. *Id.*

In the present case, defendants contend the claim against Morrison arises solely in her official capacity because "[a]ll of the negligent acts and omissions which Robbie Faye Morrison is alleged to have committed concern the manner in which she performed her duties as a crossing guard." As we stated in *Meyer*, however, whether plaintiff's allegations relate to acts performed outside an employee's official duties is not relevant to the determination of whether a defendant is being sued in an official or individual capacity. *See id.* In addition, as in *Meyer*, the complaint here, as reflected within the caption, body, and claim for relief, indicates a suit against Morrison individually and in her official capacity. Accordingly, plaintiff sufficiently pled a claim for relief against Morrison in her individual capacity.

[3] Once we determine the aggrieved party has sufficiently pled a claim against defendant in his or her individual capacity, we must determine whether that defendant is a public official or a public employee. "It is settled in this jurisdiction that a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." *Id.* at 112, 489 S.E.2d

ISENHOUR v. HUTTO

[350 N.C. 601 (1999)]

at 888; *see Harwood v. Johnson*, 326 N.C. 231, 241, 388 S.E.2d 439, 445 (1990); *Smith v. State*, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976). "An employee, on the other hand, is personally liable for negligence in the performance of his or her duties proximately causing an injury." *Reid v. Roberts*, 112 N.C. App. 222, 224, 435 S.E.2d 116, 119, *disc. rev. denied*, 335 N.C. 559, 439 S.E.2d 151 (1993); *see Givens v. Sellars*, 273 N.C. 44, 49, 159 S.E.2d 530, 534-35 (1968); *Hefner*, 235 N.C. at 7, 68 S.E.2d at 787. Public officials receive immunity because "it would be difficult to find those who would accept public office or engage in the administration of public affairs if they were to be personally liable for acts or omissions" involved in exercising their discretion. *Miller v. Jones*, 224 N.C. 783, 787, 32 S.E.2d 594, 597 (1945), *quoted in Meyer*, 347 N.C. at 112-13, 489 S.E.2d at 889.

Our courts have recognized several basic distinctions between a public official and a public employee, including: (1) a public office is a position created by the constitution or statutes; (2) a public official exercises a portion of the sovereign power; and (3) a public official exercises discretion, while public employees perform ministerial duties. *See Meyer*, 347 N.C. at 113-14, 489 S.E.2d at 889; *State v. Hord*, 264 N.C. 149, 155, 141 S.E.2d 241, 245 (1965); *Hare v. Butler*, 99 N.C. App. 693, 700, 394 S.E.2d 231, 236, *disc. rev. denied*, 327 N.C. 634, 399 S.E.2d 121 (1990). "Discretionary acts are those requiring personal deliberation, decision and judgment." *Meyer*, 347 N.C. at 113, 489 S.E.2d at 889; *Hare*, 99 N.C. App. at 700, 394 S.E.2d at 236. Ministerial duties, on the other hand, are absolute and involve "merely [the] execution of a specific duty arising from fixed and designated facts." *Meyer*, 347 N.C. at 113-14, 489 S.E.2d at 889 (quoting *Jensen v. S.C. Dep't of Soc. Servs.*, 297 S.C. 323, 332, 377 S.E.2d 102, 107 (1988)); *accord Hare*, 99 N.C. App. at 700, 394 S.E.2d at 236; *see Reid*, 112 N.C. App. at 224, 435 S.E.2d at 119.

This Court has previously recognized that police officers are considered public officials rather than public employees. *See Hord*, 264 N.C. at 155, 141 S.E.2d at 245. In *Hord* we concluded that police officers were public officials primarily because: (1) a police officer is appointed pursuant to statutory authority, and (2) a police officer's authority in enforcing the criminal laws involves the discretionary exercise of some portion of sovereign power. *Id.*

We note that cities and towns are expressly authorized to employ police officers pursuant to article 13 of chapter 160A of the General Statutes, titled "Law Enforcement." *See* N.C.G.S. § 160A-281 (1994).

Under the provisions of article 13, police officers are required to take an oath of office, N.C.G.S. § 160A-284 (1998), and are granted all powers invested in law enforcement officers by statute and the common law, N.C.G.S. § 160A-285 (1994). Because "a [police officer] is charged with the duty to enforce the ordinances of the city or town in which he is appointed to serve, as well as the criminal laws of the state," he is a public officer in that municipality. *Hord*, 264 N.C. at 155, 141 S.E.2d at 245.

Unlike the specific grant of statutory authority given municipalities to employ police officers, defendants have not directed our attention to, and our research has not disclosed, any statute specifically authorizing municipalities to employ school crossing guards *per se.* Perhaps even more important, school crossing guards do not exercise the level of discretion statutorily vested in police officers, nor do they exercise a legally significant portion of sovereign power in the performance of their duties.

Plaintiff's fourth amended complaint alleges as follows:

5. At all times herein in question, . . . *Morrison was employed by the Defendant City, working as a school crossing guard. . . .*

. . . .

12. On the date of the incident alleged herein, . . . *Morrison was assigned* by agents and employees of Defendant City to work at the intersection as a school crossing guard, *assisting children crossing The Plaza as they walked to and from Briarwood Elementary School . . . .*

13. On or about October 8, 1991, the Plaintiff's intestate, Anthony Darrell Isenhour, Jr., was a student at Briarwood Elementary School, which was located near the intersection referred to above. At approximately 2:30 p.m., after school had recessed for the day, *Plaintiff's intestate joined a group of children at the northeast corner of the intersection where they stopped and waited for directions from . . . Morrison to cross The Plaza.*

14. After the Plaintiff's intestate and other children stopped at the northeasterly corner of the intersection, . . . Morrison negligently directed the Plaintiff's intestate and the other children to walk across The Plaza . . . .

(Emphasis added.)

After careful review of the public official/public employee legal dichotomy, as applied to the allegations within plaintiff's complaint, we conclude plaintiff has sufficiently alleged that the duties of a crossing guard are ministerial in nature—they involve the " 'execution of a specific duty arising from fixed and designated facts.' " *Meyer*, 347 N.C. at 113-14, 489 S.E.2d at 889 (quoting *Jensen*, 297 S.C. at 332, 377 S.E.2d at 107). Plaintiff's allegations are therefore sufficient to overcome defendant's Rule 12(b)(6) motion to dismiss on the ground that Morrison is a public official immune to liability for ordinary negligence. We thus reverse the decision of the Court of Appeals on this issue.

Accordingly, we affirm the Court of Appeals' decision on the public duty doctrine and reverse its decision on plaintiff's claims against Morrison in her individual capacity.

AFFIRMED IN PART AND REVERSED IN PART.

Chief Justice MITCHELL and Justice PARKER concur in the result only.