Carolina Med. Partners, PLLC v. Shah, 2023 NCBC 6.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE SUPERIOR COURT DIVISION |
| MECKLENBURG COUNTY | 22 CVS 13767 |

CAROLINA MEDICAL PARTNERS, PLLC; NIMISH PATEL; and SHEPHALI PATEL,

    Plaintiffs,

v.

AMIT G. SHAH and PALMETTO MEDICAL GROUP, PLLC,

    Defendants.

**ORDER AND OPINION ON DEFENDANTS' PARTIAL MOTION TO DISMISS**

1.  Nimish Patel and Shephali Patel are physicians. For many years, they practiced together with Amit Shah, also a physician. But no more: mutual distrust between the two sides led to a mutual decision to divide their practice and end their professional relationship. It has been a messy divorce. Only with the help of a mediator were the parties able to agree on the terms of separation. Now, the Patels have brought this lawsuit, claiming that they have lived up to their end of the bargain but that Shah hasn't.

2.  Shah and his fellow defendant, Palmetto Medical Group, PLLC, have moved to dismiss one of the six claims asserted against them. (ECF No. 22.) For the following reasons, the Court **GRANTS** the motion.

*Moore & Van Allen PLLC, by Christopher D. Tomlinson, Caroline F. Savini, and Sarah H. Negus, for Plaintiffs Carolina Medical Partners, PLLC, Nimish Patel, and Shephali Patel.*

*K&L Gates LLP, by Marla T. Reschly and Daniel D. McClurg, for Defendants Amit G. Shah and Palmetto Medical Group, PLLC.*

Conrad, Judge.

# I.
# BACKGROUND

3.    The Court does not make findings of fact on a motion to dismiss. The following background assumes that the allegations of the verified complaint are true.

4.    Before their falling out, Shah and the Patels were joint owners of more than half a dozen businesses. Chief among them was Palmetto Medical Group, an adult and senior primary care practice based in South Carolina. (*See* V. Compl. ¶¶ 15, 18, ECF No. 3.)

5.    By the middle of 2021, the relationship between Shah and the Patels had soured, with each side leveling accusations of misconduct against the other. So they agreed to mediate their disputes and go their separate ways. The mediation did not produce a full and final settlement of every dispute. It did, however, produce a framework for dividing the parties' many business interests, which they memorialized in a Practice Separation Agreement. (*See* V. Compl. ¶ 20 & Ex. A ["PSA"].)

6.    There is no need to go over every term of the agreement. Just a few are relevant. To start, Shah agreed to buy the Patels' interest in Palmetto Medical Group following an appraisal. Thus, one practice became two. Shah stayed at Palmetto Medical Group as its sole owner. The Patels left and opened a new, competing practice called Carolina Medical Partners, PLLC. (*See* V. Compl. ¶ 22; PSA § 1(b).)

7.    Next, the parties agreed to notify patients that the Patels were forming their own practice and to give them the option to stay at Palmetto Medical Group or to follow the Patels to Carolina Medical Partners. Patient choice was to be paramount.

Both sides promised "to ensure that a patient's choice of primary care provider is honored" and not to "unduly influence any patient." Confused patients who called Palmetto Medical Group asking for the Patels, for example, were supposed to be given contact information for Carolina Medical Partners. (V. Compl. ¶ 23; PSA § 6.)

8. Anticipating disagreements, the parties adopted dispute resolution procedures. They also added a choice-of-law clause, which states that the agreement "shall be construed and governed in accordance with" North Carolina law. (V. Compl. ¶¶ 34, 51, 53; PSA § 12.)

9. As alleged, Shah breached the agreement almost immediately. Among other things, Shah lobbied patients to stay with Palmetto Medical Group, made sure that some patients did not get the notice about the Patels' new practice, and changed the scheduling process "so that the Patels' patients were seen by other providers." Palmetto Medical Group continued to list the Patels on its website as available physicians well after their departure. It also continued to send appointment reminders and scheduling requests to the Patels' patients, some of whom showed up, asked for the Patels, and were instead seen by another practitioner. And when patients chose to go to Carolina Medical Partners, Shah and Palmetto Medical Group refused to transfer their medical records. (*See* V. Compl. ¶¶ 24, 97, 112, 113.)

10. The Patels and Carolina Medical Partners brought this suit against Shah and Palmetto Medical Group "to enforce" the Practice Separation Agreement. For simplicity, the Court will refer to the plaintiffs as the Patels and the defendants as Shah. There are four claims for breach of the agreement, including the provisions on

patient notification and transition. There is a fifth claim for fraud. Last, there is a sixth claim labeled "Unfair and Deceptive Trade Practices," which is based on the alleged "acts intended to lure the Patels' patients to" Palmetto Medical Group. (*See, e.g.*, V. Compl. ¶¶ 1, 10, 91, 97, 112–14.)

11. Shah has moved to dismiss the sixth claim but no others. The motion is fully briefed, and on 5 January 2023, the Court held a hearing at which all parties were represented by counsel. The motion is ripe.

II.
LEGAL STANDARD

12. A motion to dismiss for failure to state a claim "tests the legal sufficiency of the complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999) (citation and quotation marks omitted). Dismissal is proper when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation and quotation marks omitted). In deciding the motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences in the light most favorable to the nonmoving party. *See, e.g.*, *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019). The Court may also consider documents, such as contracts, that are the subject of the complaint. *See, e.g.*, *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001).

## III.
## ANALYSIS

13. The claim for "Unfair and Deceptive Trade Practices" is a bit enigmatic. On its face, it appears to be grounded in statute rather than the common law. But it does not name any statute, act, or jurisdiction as the source of the cause of action.

14. Shah reads the claim as one under N.C.G.S. § 75-1.1, which proscribes "unfair or deceptive acts or practices in or affecting commerce." He contends that the complaint does not state a valid claim under section 75-1.1 because the alleged acts, even if unfair or deceptive, are not in or affecting commerce. In support, he relies primarily on statutory language that defines "commerce" to exclude "professional services rendered by a member of a learned profession." N.C.G.S. § 75-1.1(b).

15. In their opposition brief, the Patels say that the claim is not grounded in section 75-1.1 or North Carolina law but is instead grounded in South Carolina's Unfair Trade Practices Act, which has no analogous exemption for members of a learned profession. At the hearing, though, the Patels' counsel switched course, arguing that the claim was made in the alternative under either North Carolina law or South Carolina law. Later in the hearing, counsel switched course again, arguing that both States' statutes apply because part of the claim is based on a breach of the Practice Separation Agreement that is governed by its North Carolina choice-of-law clause while another part is based on extracontractual conduct governed by South Carolina law.

16. It goes without saying that a complaint should not be a moving target. Basic pleading rules make that clear. A plaintiff must give sufficient notice of its claim to

allow its adversary and the Court "to understand the nature of [the claim] and the basis for it." *Sutton v. Duke*, 277 N.C. 94, 104 (1970); *see also* N.C. R. Civ. P. 8(a)(1). Whether this claim meets that standard is questionable, given the Patels' own uncertainty.

17.    Nevertheless, the Court will assume for argument's sake that the claim draws on both North Carolina and South Carolina law. Either way, it is deficient.

18.    First, South Carolina law does not apply to any claim for unfair and deceptive trade practices predicated on a breach of the Practice Separation Agreement. This is because the parties agreed that North Carolina law would govern the interpretation and implementation of the agreement. And "parties to a business contract may agree in the business contract that North Carolina law shall govern their rights and duties in whole or in part . . . ." N.C.G.S. § 1G-3.

19.    Perhaps South Carolina law would apply to extracontractual conduct, as the Patels contend. But none is alleged. Twice, the complaint states that the Patels brought this action "for breach of and to enforce" the agreement. (Compl. ¶¶ 1, 10.) Moreover, each alleged unfair and deceptive act is also alleged to be a breach of the agreement. These acts include sending deceptive appointment reminders and scheduling requests to the Patels' patients, pressuring patients to see Shah or another practitioner rather than the Patels, falsely advertising on a website that the Patels were accepting patients at Palmetto Medical Group, and otherwise trying to influence patients' choice of provider. (*Compare* Compl. ¶¶ 24, 91, 97, *with* ¶¶ 112–14; *see also* PSA § 6.)

20. The opposition brief confirms as much. In their own words, the Patels filed suit "for breach of and to enforce the terms of the" Practice Separation Agreement. They argue, for example, that "Shah's deceitful conduct arises out of a contractual arrangement"; that he "purposefully deviated from" contract terms regarding patient transition "in breach of the" agreement; that acts such as "deceptively soliciting patients and business relationships away from the Patels" were a "breach of several provisions"; and that the "conduct occurred in the context of transitioning patients and business opportunities to a different provider of medical services, pursuant to a contractual relationship and related contractual obligations." (Pls.' Opp'n Br. 1, 3–5, 16, 18, ECF No. 31.)

21. At no point have the Patels pointed to anything other than contractual conduct as the basis for their claim. Their brief alludes to allegations that Shah disparaged them and interfered with their business relationship with an assisted living facility. Yet these alleged acts are outside the claim for unfair trade practices and, in any event, are also named among the claimed breaches of the Practice Separation Agreement. (*See, e.g.*, Compl. ¶¶ 25, 26, 39–44, 91, 97; PSA §§ 7, 11.)

22. In short, the claim for "Unfair and Deceptive Trade Practices" is predicated entirely on breaches of the Practice Separation Agreement. Thus, the parties' selection of North Carolina law governs, and the complaint fails to state a claim under South Carolina's Unfair Trade Practices Act.

23. Turning to North Carolina law, the Court also concludes that the complaint fails to state a claim under section 75-1.1. As discussed, the statute defines commerce

to exclude "professional services rendered by a member of a learned profession." N.C.G.S § 75-1.1(b). This statutory exemption, which "for medical professionals has been broadly interpreted," requires a two-part inquiry: "First, the person or entity performing the alleged act must be a member of a learned profession. Second, the conduct in question must be a rendering of professional services." *Sykes*, 372 N.C. at 334 (cleaned up); *accord Wheeless v. Maria Parham Med. Ctr., Inc.*, 237 N.C. App. 584, 589 (2014).

24. Without question, Shah (a physician) and Palmetto Medical Group (a primary care practice) are members of a learned profession. The only issue is whether their alleged conduct involves the rendering of medical services. It does.

25. All the alleged unfair or deceptive acts concern efforts to influence patients to choose Shah over the Patels as medical provider. The complaint puts it bluntly: Shah intended "to deceive patients into *seeking medical service* at [Palmetto Medical Group] instead of with the Patels." (Compl. ¶ 114 (emphasis added).) This alleged conduct—centered on patient solicitation—"is directly related to providing patient care" and fits comfortably within the statutory exemption. *Sykes*, 372 N.C. at 336; *see also Aesthetic Facial & Ocular Plastic Surgery Ctr., P.A. v. Zaldivar*, 264 N.C. App. 260, 275 (2019) (concluding that the solicitation of patients and practice of medicine alleged to be in breach of contract arose from a rendering of professional services); *Alamance Fam. Prac., P.A. v. Lindley*, 2018 NCBC LEXIS 83, at *24 (N.C. Super. Ct. Aug. 14, 2018) (granting motion to dismiss claim based on allegations that

defendant "began an allergy testing practice, obtained patient information, solicited patients, and attempted to secure a referral agreement").

26. Accordingly, the learned profession exemption applies, and the Patels have not adequately alleged acts in or affecting commerce, as required by section 75-1.1. The Court need not and does not reach Shah's alternative arguments for dismissal.

IV.
CONCLUSION

27. For all these reasons, the Court **GRANTS** the motion. The claim for unfair and deceptive trade practice is **DISMISSED**.

**SO ORDERED**, this the 24th day of January, 2023.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases