Mayer v. Goldner, 2025 NCBC 12.

STATE OF NORTH CAROLINA

LINCOLN COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24 CVS 1258

GABRIEL JUDAH MAYER,
individually and derivatively on
behalf of SHERBROOKE
CORPORATE LTD., and
MATTHEW QUEEN,

        Plaintiffs,

v.

SAMUEL GOLDNER,

        Defendant,

and

SHERBROOKE CORPORATE
LTD.,

        Nominal Defendant.

**ORDER AND OPINION
ON DEFENDANT'S PARTIAL
MOTION TO DISMISS**

*Parker Poe Adams & Bernstein LLP, by Scott E. Bayzle and Andrew Tabeling, for Plaintiffs Gabriel Judah Mayer and Matthew Queen.*

*McGuireWoods LLP, by Elisabeth Briand, Zachary L. McCamey, and Brian A. Kahn, for Defendant Samuel Goldner and Nominal Defendant Sherbrooke Corporate Ltd.*

Conrad, Judge.

1. This case involves a dispute among the shareholders of Sherbrooke Corporate Ltd. Gabriel Mayer and Matthew Queen, both minority shareholders, accuse Samuel Goldner, the majority shareholder, of crippling the company through self-dealing and dereliction of duty. Goldner has moved to dismiss several claims under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. (*See* ECF No. 14.) For the following reasons, the Court **GRANTS in part** and **DENIES in part** his motion.

2.     **Background.**  The Court does not make findings of fact on a Rule 12(b)(6) motion to dismiss.  The following background assumes that the allegations of the complaint are true.

3.     Sherbrooke, a North Carolina corporation, is a captive insurance company.[*] Goldner, Mayer, and Queen are its only shareholders and, until recently, were all officers and directors.  Sherbrooke's business is to reinsure insurance policies that provide coverage to nursing homes owned by Goldner.  Under filings made with state regulatory authorities, the company may reinsure only those policies issued by a fronting carrier called Victoria Insurance.  (*See* Compl. ¶¶ 10–13, 17, 18, ECF No. 3.)

4.     Because Sherbrooke's sole purpose is to reinsure Goldner's nursing homes, it has no revenue other than the nursing homes' insurance premiums.  Mayer and Queen allege that this revenue source became unreliable and that Goldner is to blame.  For the 2022-2023 policy year, Goldner underpaid premiums by nearly $6 million.  Then, in late 2022, he shut off the spigot completely.  Despite assuring Mayer and Queen that he could and would pay the balance, neither Goldner nor his nursing homes have since paid any premiums to Sherbrooke.  (*See* Compl. ¶¶ 25–28, 30, 31, 35; *see also* Demand Letter, Compl. Ex. C.)

5.     This revenue drought imperiled Sherbrooke's solvency.  According to Mayer and Queen, Goldner pushed the company over the brink in 2024.  He began by

---

[*] "A captive insurance company is an insurance company that is owned by another organization and whose exclusive purpose is to insure risks of the parent organization and affiliated companies.  Captive insurance companies must be licensed, must meet certain capital and surplus requirements, and must file annual reports to the Commissioner" of Insurance. *Causey v. Cannon Sur., LLC*, 269 N.C. App. 134, 135 (2020) (cleaned up).

removing Mayer and Queen as officers and directors and seizing total control. With Goldner alone at the helm, Sherbrooke's operations came to a halt. Goldner did not complete its annual audit for 2023, coordinate payment of its 2023 taxes, or prepare mandatory regulatory filings. Worse yet, he ignored Victoria Insurance's demand for $3.2 million in overdue payments, as well as its offer to renegotiate its agreement with Sherbrooke. To that point, Victoria Insurance had covered several litigated claims despite the unpaid premiums—a windfall to the nursing homes and Goldner. But Goldner's silence led Victoria Insurance to stop payment of any claims under policies reinsured by Sherbrooke. In the months afterward, Goldner refused to administer Sherbrooke's open claims and stymied efforts by the company's outside counsel to defend it against ongoing litigation. (*See* Compl. ¶¶ 33, 46–48, 51–54, 58, 61–66.)

6.     Mayer and Queen believe that Goldner cares little about Sherbrooke's interests, aiming instead to use its assets to solve his own financial crisis. As alleged, Goldner faces at least a dozen civil judgments totaling more than $50 million. Since seizing control of Sherbrooke, he has taken money from its accounts to pay his personal legal expenses. Having been stripped of power, Mayer and Queen lack the ability to safeguard what remains of the company's assets from similar misuse. (*See* Compl. ¶¶ 42, 44, 45, 67, 70.)

7.     The complaint includes six claims for relief based on these allegations. Mayer asserts derivative claims on Sherbrooke's behalf for breach of fiduciary duty, constructive fraud, and unjust enrichment. Mayer and Queen also assert a claim to

remove Goldner as a director under N.C.G.S. § 55-8-09, along with two purported claims for an equitable accounting and punitive damages. (*See, e.g.*, Compl. ¶¶ 79, 85, 92, 101, 106, 111.)

8.     Goldner has moved to dismiss the complaint, with some limited exceptions. (*See* ECF No. 14.)  The motion is fully briefed, and the Court held a hearing on 11 March 2025.  The motion is ripe for decision.

9.     **Legal Standard.**  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint."  *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999) (citation and quotation marks omitted).  Dismissal is proper when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim."  *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation and quotation marks omitted).  In deciding the motion, the Court must treat all well-pleaded allegations as true and view the facts and permissible inferences in the light most favorable to the nonmoving party.  *See, e.g.*, *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019).

10.     **Derivative Claims.**  Goldner concedes that he owes fiduciary duties to Sherbrooke as its sole director.  He also concedes that the complaint's allegations of self-dealing are sufficient to support Mayer's derivative claims for breach of fiduciary duty, constructive fraud, and unjust enrichment.  But Goldner urges the Court to dismiss these claims to the extent they are based on the nonpayment of insurance premiums.  As Goldner sees it, the premiums are his nursing homes' responsibility,

not his personal responsibility. By seeking to hold him liable for failing to pay the premiums, he contends, the complaint improperly imputes to him obligations owed by these separate entities.

11. This argument misreads Mayer's allegations. The complaint does not allege that Goldner personally owes insurance premiums to Sherbrooke. Nor does it impute his nursing homes' obligations to him. Rather, taken in the light most favorable to Mayer, the allegations show that Goldner controlled the nursing homes' purse strings, decided when and whether they paid premiums, and chose to shortchange Sherbrooke without a legitimate reason. (*See* Compl. ¶¶ 25 (alleging that Sherbrooke "reinsured nursing homes owned by . . . Goldner"), 26 (alleging "Goldner's payment of premiums"), 27 (alleging that "Goldner arbitrarily underpaid insurance premiums"), 30 (alleging that "Goldner completely stopped paying premiums").) Mayer's derivative demand, which is attached to the complaint and therefore part of it, says much the same thing. (*See* Demand Letter (asserting that "Goldner, through his operation of Goldner Capital Management, has arbitrarily underpaid insurance premiums").) What's more, the allegations support a reasonable inference that Goldner kept Sherbrooke from securing its finances by first lulling Mayer and Queen (his fellow directors) with false assurances that payment was forthcoming and later sidelining them entirely. (*See* Compl. ¶¶ 31, 35, 46, 47.) Left unchecked, Goldner has allegedly suspended Sherbrooke's legal, commercial, and administrative activities—all while intending to use its remaining assets to ease his own financial troubles. (*See* Compl. ¶¶ 44, 51, 54, 58.)

12.     Thus, the thrust of the complaint is that Goldner used his position on both sides of the reinsurance transaction to benefit himself and his nursing homes at Sherbrooke's expense.  Goldner's argument, however, is limited to his cramped, partisan reading of the complaint.  He offers no other reason to conclude that the complaint, when construed liberally and taking inferences in Mayer's favor, fails to state claims for breach of fiduciary duty, constructive fraud, and unjust enrichment. The Court therefore denies the motion to dismiss these claims.  *See, e.g.*, *Duffy v. Schussler*, 287 N.C. App. 46, 56 (2022) (observing that a corporate officer must "always discharge the responsibilities of the office with undivided loyalty to the corporation" and "strive to advance the best interests of the corporation" (citation and quotation marks omitted)).

13.     **<u>Removal of Director.</u>**  To state a claim for removal of a corporate director, a complaining shareholder must allege that "[t]he director engaged in fraudulent or dishonest conduct, or gross abuse of authority or discretion, with respect to the corporation" and that "[r]emoval is in the best interest of the corporation."  N.C.G.S. § 55-8-09(a).  This "is an extraordinary remedy."  *JT Russell & Sons Inc. v. Russell*, 2025 NCBC LEXIS 22, at *16 (N.C. Super. Ct. Mar. 4, 2025) (citation and quotations omitted).  The statute "is not intended to permit judicial resolution of internal corporate struggles for control except in those cases in which a court finds that the director has been guilty of wrongful conduct of the type described."  *Mauck v. Cherry Oil Co.*, 2022 NCBC LEXIS 39, at *22 (N.C. Super. Ct. May 2, 2022) (citation and quotation marks omitted).

14. Goldner contends that Mayer and Queen have alleged nothing more than a garden-variety struggle for corporate control. He also contends that the complaint alleges only in conclusory fashion that his removal is in Sherbrooke's best interest.

15. These arguments are wholly unconvincing. The allegations that underlie the derivative claims also underlie the claim for removal. Taken as true, the allegations show that Goldner misappropriated company funds to pay personal legal expenses. (*See* Compl. ¶ 67.) They also show that he deprived Sherbrooke of its only revenue source while giving false assurances of future payment. (*See, e.g.*, Compl. ¶¶ 30, 31, 36.) And they show that upon taking control of Sherbrooke, Goldner has been derelict in his duty: failing to complete the company's 2023 audit, taxes, and regulatory filings; ignoring Victoria Insurance's overtures to settle accounts or renegotiate; and making no effort to administer open claims or defend ongoing litigation. (*See, e.g.*, Compl. ¶¶ 48, 51, 54, 58, 61, 63–66.) These actions have left Sherbrooke rudderless and insolvent while exposing it to legal and regulatory jeopardy.

16. The Court concludes that the complaint amply alleges fraudulent or dishonest conduct and gross abuse of authority or discretion. So too for the allegations that Goldner's removal is in Sherbrooke's best interest. *See JT Russell & Sons*, 2025 NCBC LEXIS 22, at *17–18 (denying motion to dismiss claim based on allegations of self-dealing and unlawful seizure of control by directors); *see also Taylor v. Hinkle*, 360 Ark. 121, 139 (2004) (finding that director's "blatant violations of the franchise agreement" and "clear intentions to commit other actions designed to wrest

control away" were sufficient to show a gross abuse of discretion); *cf. Vechery v. Max Sound Corp.*, 2023 Cal Super. LEXIS 37059, at *7 (Cal. Super. Ct. Apr. 28, 2023) (concluding that director's "failure to adhere to corporate formalities and lack of any internal restraints or oversight of his management" and "conflicted transactions" showed a gross abuse of authority).

17.    For the first time at the hearing, Goldner's counsel argued that the events in dispute are too remote in time to support his removal.  Some courts have indeed held "that because judicial removal of directors is a remedy designed, in part, to prevent future abuse, the acts complained of should be relatively recent."  *Neiman v. Tri R Angus, Inc.*, 739 N.W.2d 182, 190 (Neb. 2007).  Even so, this argument, which is not in Goldner's briefs, comes too late.  And on these facts, whether Goldner's misconduct is too stale to support relief is an issue better suited to summary judgment.

18.    Accordingly, the Court denies the motion to dismiss this claim.

19.    **Accounting and Punitive Damages.**  Finally, Mayer and Queen purport to assert claims for an equitable accounting and punitive damages.  These are remedies, not independent causes of action.  *See Elhulu v. Alshalabi*, 2021 NCBC LEXIS 44, at *20 (N.C. Super. Ct. Apr. 29, 2021) (stating that an equitable accounting "is a remedy, not an independent cause of action"); *Halikierra Cmty. Servs. LLC v. N.C. HHS*, 2021 NCBC LEXIS 27, at *5 (N.C. Super. Ct. Mar. 25, 2021) (stating that "punitive damages are a remedy rather than a standalone cause of action").  Accordingly, the Court grants the motion to dismiss the claims for an equitable

accounting and punitive damages without prejudice to Mayer's and Queen's right to pursue these remedies, if appropriate, at a later stage.

20. **Conclusion.** For these reasons, the Court **DENIES** the motion to dismiss the claims for breach of fiduciary duty, constructive fraud, unjust enrichment, and removal of a director. The Court **GRANTS** the motion to dismiss the claims for an equitable accounting and punitive damages but concludes that Mayer and Queen may pursue these remedies, if appropriate, at a later stage.

**SO ORDERED**, this the 17th day of March, 2025.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
for Complex Business Cases